# EXHIBIT 1

# EXHIBIT 1

```
1  KARL S. HALL
   Reno City Attorney
2  PETER K. KEEGAN
   Deputy City Attorney
3  Nevada State Bar No. 12237
   Post Office Box 1900
4  Reno, Nevada 89505
   (775) 334-2050
5  Attorneys for the City of Reno
6
7
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ERICA BLUTH, an individual, and LAVORIA WILSON, an individual, | CASE NO.: 3:25-cv-00129-ART-CSD |
|---|---|
| Plaintiff, | **CITY OF RENO'S SUPPLEMENT TO ITS MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 16)** |
| vs. | |
| TYLER BAEHR, and individual, and THE CITY OF RENO, a political subdivision of the State of Nevada, | |
| Defendants. | |

Defendant City of Reno ("the City"), by and through its attorneys, Reno City Attorney Karl S. Hall and Deputy City Attorney Peter Keegan, hereby moves for judgment on the pleadings and seeks dismissal of Plaintiffs' Complaint for Damages and Declaratory Relief ("Complaint") (ECF No. 1). This Motion is based on Federal Rule of Civil Procedure ("FRCP") 12(c); the following Memorandum of Points and Authorities; and any additional information the Court may choose to consider.

///
///
///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

### A. Federal Civil Case No. 3:25-CV-00129

This is a 42 U.S.C § 1983 action based upon allegations that Defendant Tyler Baehr ("Defendant Baehr"), a former law enforcement officer with the Reno Police Department and employee of the City, performed pretextual traffic stops of Plaintiffs Erica Bluth and Lavoria Wilson (collectively "Plaintiffs") for the improper and malicious purpose of harassing Plaintiffs and accessing personal and private information on their cell phones.[1]

On March 6, 2025, Plaintiffs filed their Complaint for Damages and Declaratory Relief (ECF No. 1), which sets forth the following causes of action against Defendant Baehr and the City: (1) Violation of Fourth Amendment Rights Under 42 U.S.C. § 1983 (Against Defendant Baehr); (2) Violation of Nevada Constitution Article 1, Section 18 (Against Defendant Baehr and the City); (3) Intrusion Upon Seclusion (Against Defendant Baehr and the City); and (4) 42 U.S.C. 1983 – *Monell* Claim for Failure to Train (Against the City).[2]

Plaintiffs base their first cause of action against Defendant Baehr upon allegations that he violated Plaintiffs' Fourth Amendment rights and is individually liable under § 1983.[3] Plaintiffs' second cause of action is based upon allegations that the City and Defendant Baehr violated Article 1, Section 18 of the Nevada Constitution when Defendant Baehr, for his own individual purposes, intentionally accessed, viewed, and copied private contents from Plaintiffs' cell phones without their authorization and for non-law enforcement purposes.[4]

In support of the third cause of action, Plaintiffs allege that the City is liable for Defendant Baehr's commission of the intentional tort of Intrusion Upon Seclusion based upon his unauthorized access to private and intimate photographs and videos stored on Plaintiffs' phones.[5] Plaintiffs' fourth cause of action is a § 1983 *Monell* claim against the City for allegedly failing to

---

[1] Complaint (ECF No. 1 at 3-5 ¶¶ 13-27).
[2] *See id*. generally at pages 5-9.
[3] Complaint (ECF No. 1 at 5-7 ¶¶ 28-36).
[4] *Id*. at 6-7 ¶¶ 37- 40.
[5] *Id*. at 7-8 ¶¶ 41-46.

train Defendant Baehr.[6]

On March 28, 2025, the City filed its Answer (ECF No. 6) and denied Plaintiffs' claims against it. All of Plaintiffs' causes of action against the City fail under FRCP 12(c) for the following reasons: (1) the City cannot be held liable for Plaintiffs' state law tort claims under a theory of respondeat superior because Plaintiffs' allegations demonstrate Defendant Baehr was acting in an individual capacity outside the scope of his employment with the City; (2) the City is entitled to employer immunity under NRS § 41.745 such that the City is shielded from liability for Plaintiffs' state law claims; (3) Plaintiffs fail to plead a plausible *Monell* claim against the City; and (4) Any amendment of the Complaint would be futile.

## II.   LEGAL STANDARD

FRCP 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. FRCP 12(c) challenges the legal sufficiency of the opposing party's pleadings, which "may save the parties needless and considerable time and expense which otherwise would be incurred during discovery and trial."[7] "Judgment on the pleadings is appropriate if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law."[8] Rules 12(b)(6) and (c) are virtually interchangeable. In deciding a Rule 12(c) motion, the court applies the same standards applicable to a Rule 12(b)(6) motion.[9] This includes the *Twombly/Iqbal* "plausibility" standard.[10]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[6] *Id*. at 8-10 ¶¶ 47-55.

[7] *Miller v. Indiana Hosp.,* 562 F. Supp. 1259, 1268 (W.D. Pa. 1983); *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008) (internal citations omitted)).

[8] *Morgan*, 436 F. Supp. at 1155 (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989)).

[9] *Cafasso, U.S. ex. Rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054, fn. 4 (9th Cir. 2011) (internal citations omitted); *Ross v. U.S. Bank Nat'l Ass'n.* 542 F. Supp. 2d 1014, 1023 (N.D. Ca. 2008).

[10] *Chavez v. United States,* 683 F.3d. 1102, 1108-1109 (9th Cir. 2012); *L-7 Designs Inc. v. Old Navy LLC,* 647 F.3d 419, 429-430 (2nd Cir. 2011).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

inference that the defendant is liable for the misconduct alleged."[12] If a complaint fails to "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"[13]

Dismissal of a complaint is proper "where the allegations are insufficient to establish the elements of a claim for relief."[14] In analyzing motions to dismiss, courts must accept the plaintiff's factual allegations as true and must construe the complaint in the light most favorable to the plaintiff.[15] A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."[16] "Factual allegations must be enough to raise a right to relief above the speculative level."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."[18]

### III.    ARGUMENT

**A.    Respondeat Superior Liability Cannot Attach to the City for the State Law Torts Plaintiffs Allege Defendant Baehr Committed While Acting in His Individual Capacity and Outside the Scope of His Employment.**

Plaintiffs' second and third causes of action against the City fail and should be dismissed because Plaintiffs fail to plead sufficient factual allegations that Defendant Baehr was acting in his official capacity. The City, therefore, cannot be held liable under a theory of respondeat superior.

Plaintiffs generally allege that the City, under the doctrine of respondeat superior, is "liable as a principal for all torts committed by its employees and agents acting within the course and scope of their employment, including the misconduct by Baehr . . . ."[19] Plaintiffs assert two state law torts against Defendant Baehr (in his individual capacity) and the City.[20] Specifically, Plaintiffs' second cause of action against Defendant Baehr and the City is for a violation of Nevada

---

[12] *Iqbal*, 556 U.S. at 678.
[13] *Id.* at 679.
[14] FRCP 12(b)(6); *Stockmeier v. Nevada Dep't of Corr.*, 124 Nev. 313, 316, 183 P.3d 133, 135 (2008).
[15] *Madison v. Graham*, 316 F.3d 867, 869 (9th Cir. 2002).
[16] *Papsan v. Allain*, 478 U.S. 265, 286 (1986); *see also, Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) (legal conclusions cast in the form of factual allegations in the complaint are not entitled to an assumption of truth).
[17] *Twombly*, 550 U.S. at 555.
[18] *Id.* at 556.
[19] Complaint (ECF No. 1 at 8 ¶ 45).
[20] Complaint (ECF No. 1 at 2-3 ¶¶ 9, 11).

Constitution Article 1, Section 18, which is a state constitutional tort claim.[21] Plaintiffs' third cause of action for Intrusion Upon Seclusion against Defendant Baehr and the City is a state law intentional tort claim.[22] The City can only be held liable for these state law claims under a theory of respondeat superior "when the employee is under the control of the employer and when the act is within the scope of employment."[23] "Issues of respondeat superior liability . . . may be resolved as a matter of law when evidence of an employee's status at the time of the incident is undisputed."[24]

Plaintiffs assert the following threadbare, conclusory allegations that Defendant Baehr was acting in his official capacity:

- "Baehr was at all times relevant herein acting under color of state law as described below."[25]
- "[A]t all times relevant hereto, Baehr was acting within the scope of his employment with the City of Reno at the time of the incidents complained of herein."[26]

Plaintiffs' Complaint (ECF No. 1), however, plainly describes Defendant Baehr as having intentionally engaged in an independent venture for wholly personal reasons, with no legitimate law enforcement purpose, and which was unforeseeable to a "prudent person."[27] The Complaint (ECF No. 1) is devoid of **any factual allegations** that Defendant Baehr was acting in an official capacity within the scope of his employment with the City. The City, therefore, cannot be held liable under the doctrine of respondeat superior. Plaintiffs fail to state a plausible claim for relief

---

[21] *See Mack v. Williams*, 138 Nev. 854, 869, 522 P.3d 434, 449 (2022) (discussing the constitutional-tort framework adopted by the Court.).
[22] *See Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1075 (D. Nev. 2019) (citing *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 734 (Nev. 2017); *People for Ethical Treatment of Animals (PETA) v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1279 (1995), *overruled on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 632, 940 P.2d 127 (1997)).
[23] *Molino v. Asher,* 96 Nev. 814, 817, 618 P.2d 878, 879 (1980).
[24] *Kornton v. Conrad, Inc.,* 119 Nev. 123, 125, 67 P.3d 316, 317 (2003).
[25] Complaint, (ECF No. 1 at 2 ¶ 8). *See also Twombly*, 550 U.S. at 556 (threadbare, conclusory allegations are insufficient).
[26] Complaint, (ECF No. 1 at 2 ¶ 10).
[27] *Id*. at 6-7 ¶¶ 30, 37- 40. *See also Anderson v. Mandalay Corp.*, 131 Nev. 825, 829, 358 P.3d 242, 245 (2015) (discussing that employer can only be held liable for intentional tort of employee if "reasonably foreseeable under the facts and circumstances of the case considering nature and scope of his or her employment.").

against the City for Violation of Nevada Constitution, Article 1 or Intrusion Upon Seclusion.[28] Plaintiffs' second and third state law tort claims against the City should be dismissed under FRCP 12(c) for this reason alone.

    **B.    Employer Immunity Shields the City From Liability For Plaintiffs' State Law Claims.**

NRS § 41.03475 and NRS § 41.745 entitle the City to employer immunity; Plaintiffs' state law tort claims against the City, therefore, fail under FRCP 12(c).

NRS § 41.03475 states, "Except as otherwise provided in NRS 41.745, no judgment may be entered against . . . a political subdivision of the State for any act or omission of any present or former . . . employee . . . which was outside the course and scope of the person's public duties or employment."

NRS § 41.745(1) further provides:

> An employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee:
>
> (a) Was a truly independent venture of the employee;
>
> (b) Was not committed in the course of the very task assigned to the employee; and
>
> (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.
>
> For the purposes of this subsection, ***conduct of an employee is reasonably foreseeable if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury***.[29]

(Emphasis supplied.)

The Nevada Supreme Court held that "NRS 41.745 makes employers vicariously liable for employees' intentional torts ***if a plaintiff can show*** the intentional conduct was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment."[30] The Court also noted that "inquiries focused on the facts and circumstances

---

[28] *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[29] *Wood v. Safeway, Inc.*, 121 Nev. 724, 737, 121 P.3d 1026, 1035 (2005).
[30] *Anderson*, 131 Nev. at 829, 358 P.3d at 245 (emphasis added).

of a case are *typically* factual, not legal[;]" however, "where undisputed evidence exists concerning the employee's status at the time of the tortious act, the issue may be resolved as a matter of law."[31] Additionally, the Nevada Legislature made it expressly clear in NRS § 41.745(2) that "nothing in this section imposes strict liability on an employer for any unforeseeable intentional act of an employee."[32]

      i.    **The City is Immune From Plaintiffs' Second Cause of Action Alleging a State Constitutional Tort Claim for Violation of Article 1, Section 18.**

Plaintiffs' second cause of action is a state law constitutional tort claim. A state law constitutional tort claim "generally refers to a damages action for violation of a constitutional right against a government or individual defendants."[33] In *Mack v. Williams*, the Nevada Supreme Court, answering a certified question from this Court, stated that Article 1, Section 18 of the Nevada Constitution does contain an implied right of action for damages.[34] "Article 1, Section 18 of the Nevada Constitution uses almost the same words as the Fourth Amendment does to prohibit unreasonable searches and seizures."[35] Even a cursory evaluation of Plaintiffs' Complaint,[36] however, reveals that Defendant Baehr's conduct was outside the course and scope of his employment, thereby qualifying the City for employer immunity under all three prongs of the immunity test set forth in NRS § 41.745(1). Accordingly, Plaintiffs' second cause of action against the City fails under FRCP 12(c).

First, according to Plaintiffs, Defendant "Baehr intentionally intruded upon Plaintiffs' solitude and seclusion . . . for his personal use."[37] And Defendant Baehr used "law enforcement authority to obtain personal information for non-law enforcement purposes."[38] As pleaded, these

---

[31] *Compare Anderson*, 131 Nev. at 829 *with Carpenter v. Denny*, No. 2:23-CV-00208-RFB-NJK, 2024 WL 4349353, at *4 (D. Nev. Sept. 29, 2024) (citing *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996); *Kornton v. Conrad, Inc.*, 67 P.3d 316, 317 (Nev. 2003)).
[32] NRS § 41.745(2).
[33] *Mack,* 138 Nev. at 863.
[34] *Id.*; *see also Bai v. Johnson,* No. 2:20-CV-2192-RFB-EJY, 2025 WL 973860, at *3 (D. Nev. Mar. 31, 2025).
[35] *Braxton v. Clark Cnty. Sch. Dist.*, No. 2:23-CV-00144-JAD-BNW, 2023 WL 11284282, at *2 (D. Nev. Nov. 8, 2023) (citing *Cortes v. State*, 127 Nev. 505, 260 P.3d 184, 190-91 (Nev. 2011)).
[36] Complaint (ECF No. 1 at 5 ¶ 28; 6 ¶ 37; 7 ¶ 41; 8 ¶ 47) (Plaintiffs' Complaint contains four causes of action, which each incorporate all preceding paragraphs as though each were fully set forth verbatim therein.).
[37] *Id*. at 7 ¶¶ 41, 42.
[38] *Id*. at 8 ¶¶ 47, 48.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

allegations patently satisfy the "independent venture" prong set forth in NRS § 41.745(1)(a).[39]

Second, Plaintiffs' Complaint demonstrates that Baehr's conduct was not committed in the course of his assigned tasks, which satisfies the second immunity prong set forth in NRS § 41.745(1).[40] Plaintiffs allege "the acts of Baehr . . . were dishonest, intentional, wanton, malicious, and oppressive."[41] And "Baehr's seizure and search of Plaintiffs' phones . . . was objectively unreasonable and without probable cause, as the phones and their contents had no relation to any legitimate law enforcement purpose during routine traffic stops."[42] Plaintiffs further allege that Defendant Baehr "exceeded any legitimate scope of examination of the phones," and "with respect to Plaintiff Bluth, . . . [Baehr used] his position of authority to obtain personal information for non-law enforcement purposes."[43]

Most importantly to the "course of assigned tasks" prong under NRS § 41.745(1)(b), Plaintiffs allege that Defendant "Baehr let Wilson go without issuing a citation, deceptively justifying the duration of the seizure by claiming difficulties looking up her information."[44] The fact that Defendant Baehr let Plaintiff Wilson go is analogous to the determinative fact of the *Gravelle* case.[45] In *Gravelle*, defendant J.C. Penny was not vicariously liable for its store clerk's assault of an intervening bystander to a merchandise theft because the clerk's assault occurred after the merchandise had been returned to the store, and therefore no longer concerned his employment.[46] The Restatement (Third) Of Agency explains:

> When an employee commits a tort with the sole intention of furthering the employee's own purposes, and not any purpose of the employer, it is neither

---

[39] NRS § 41.745(1)(a); *see also Wood*, 121 Nev. at 737, 121 P.3d at 1035.
[40] NRS § 41.745(1)(b). *See also J.C. Penney Co. v. Gravelle*, 62 Nev. 434, 450, 155 P.2d 477, 482 (1945) ("The acts not being within any express authority given by the company, nor within the scope of Whitworth's duty or employment, the principle of respondeat superior does not apply."); Restatement (Third) Of Agency § 7.07 (2006) ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.").
[41] Complaint (ECF No. 1 at 6 ¶¶ 35, 37).
[42] *Id*. at 5-6 ¶¶ 31, 37.
[43] *Id*. at 5-6 ¶¶ 33, 37.
[44] *Id*. at 4 ¶ 25; *see* Restatement (Third) Of Agency § 7.07, Comment b. (2006) ("If an employee undertakes a course of work-related conduct for the sole purpose of furthering the employee's interests or those of a third party, the employee's conduct will often lie beyond the employer's effective control).
[45] *See Wood v. Safeway, Inc*., 121 Nev. at 738, 121 P.3d at 1035 (discussing *J.C. Penney Co. v. Gravelle,* 62 Nev. at 450, 155 P.2d at 482).
[46] *Gravelle*, 62 Nev. at 450, 155 P.2d at 482.

    fair nor true-to-life to characterize the employee's action as that of a representative of the employer. The employee's intention severs the basis for treating the employee's act as that of the employer in the employee's interaction with the third party.[47]

Like the J.C. Penny store clerk in *Gravelle*, despite being on duty at the time, Defendant Baehr's actions demonstrate his intent was to further his personal independent venture, which was inconsistent with his assigned role, and provided no benefit to his employer, the City, or its citizens.[48] The second prong is met.

  Third, as to the foreseeability prong set forth in NRS 41.745(1)(c), Plaintiffs concede that Defendant Baehr's conduct was not "reasonably foreseeable" by specifically alleging that "a prudent person would not have concluded that there was any fair probability that inspection or copying of Plaintiffs' personal phone contents was necessary or legally justified."[49] And that Baehr's search of their phones "was objectively unreasonable and without probable cause, as their phones and their contents had no relation to any legitimate law enforcement purpose during routine traffic stops."[50] Plaintiffs further allege that "Baehr's intrusion would be highly offensive to a reasonable person, as it involved: Abuse of police authority to gain access to private information; [and] Violation of trust placed in law enforcement; . . . and use of a routine traffic stop to obtain unauthorized access to private information."[51] From the face of the Complaint (ECF No. 1), the third prong is met.

  Accepting Plaintiffs' factual allegations as true, Defendant Baehr did not commit alleged tortious actions while conducting his assigned tasks but instead engaged in an unforeseeable independent venture for personal rather than law enforcement purposes. The three prongs for

---

[47] Restatement (Third) Of Agency § 7.07, Comment b. (2006).
[48] *See Carpenter v. Denny,* No. 2:23-CV-00208-RFB-NJK, 2024 WL 4349353, at *5 (D. Nev. Sept. 29, 2024) (explaining the factors Nevada Courts deem most important in determining whether the employee was acting within the course and scope of the employee's employment include: whether at the time of the collision, the employee was "on-call" or compensated for the time, *see, e.g., Evans v. Sw. Gas Corp.*, 842 P.2d 719, 723 (Nev. 1992); *Kornton,* 67 P.3d at 317; whether the particular vehicle trip was directed by the employer or accomplished for the benefit of the employer, *see National Convenience Stores, Inc. v. Fantauzzi,* 584 P.2d 689, 692 (Nev. 1978), and whether the nature of the vehicle trip was consistent with the employee's assigned role and duties. *Id.*
[49] Complaint (ECF No. 1 at 5 ¶ 30).
[50] *Id*. at 5-6 ¶¶ 31, 37.
[51] *Id*. at 7 ¶ 44.

employer immunity set forth in NRS § 41.745(1) are met; therefore, the City is entitled to employer immunity for Plaintiffs' second cause of action and the claim fails under FRCP 12(c).[52]

### ii. The City is Immune From Plaintiffs' Third Cause of Action for Intrusion Upon Seclusion.

"The tort of intrusion upon seclusion is 'grounded in a plaintiff's objective expectation of privacy.'"[53] "To recover for the tort of intrusion, a plaintiff must prove the following elements: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person."[54]

Given the aforementioned factual allegations pleaded in Plaintiffs' Complaint (ECF No. 1), the City is also entitled to immunity under NRS § 41.745(1) for the third cause of action because Defendant Baehr's actions were unforeseeable. Dismissal is warranted because, according to Plaintiffs' Complaint, Defendant Baehr engaged in intentional conduct that meets all three prongs of NRS § 41.745(1).[55]

First, Plaintiffs allege Defendant Baehr intruded upon their privacy for his personal use rather than for law enforcement purposes, thereby satisfying the "independent venture" prong of NRS 41.745(1)(a).[56]

Second, Plaintiffs' factual allegations demonstrate Defendant Baehr's conduct was outside the scope of his assigned task, pursuant to NRS § 41.745(1)(b), because they allege his seizure of private information from their phones had no relation to a legitimate law enforcement purpose.[57] Plaintiffs also acknowledge that Defendant "Baehr let Wilson go without issuing a citation,

---

[52] *Cloes v. City of Mesquite*, 582 F. App'x. 721, 726 (9th Cir. 2014)(citing *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996) ("Generally, whether an employee is acting within the scope of his or her employment is a question for the trier of fact, but where undisputed evidence exists concerning the employee's status at the time of the tortious act, the issue may be resolved as a matter of law.").

[53] *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1075 (D. Nev. 2019) (citing *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 734 (Nev. 2017)).

[54] *People for Ethical Treatment of Animals (PETA) v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1279 (1995) (*overruled on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 632, 940 P.2d 127 (1997)).

[55] *See supra*, Section III(B)(i).

[56] *See* Complaint (ECF No. 1 at 7-8 ¶¶ 42, 48).

[57] *See id*. at 5-6 ¶¶ 31, 33, 37.

deceptively justifying the duration of the seizure by claiming difficulties looking up her information."[58] The second prong is met.

Finally, Plaintiffs' Complaint (ECF No. 1) satisfies the foreseeability prong set forth in NRS § 41.745(1)(c) because Plaintiffs specifically allege that "a prudent person would not have concluded that there was any fair probability that inspection or copying of Plaintiffs' personal phone contents was necessary or legally justified."[59]

Plaintiffs' allegations of Defendant Baehr's intentional conduct are similar to the independent venture of a law enforcement officer described in *Cloes v. City of Mesquite*, 582 F. App'x 721, 726 (9th Cir. 2014), where the Ninth Circuit Court of Appeals held that a city employer could not be held liable under the doctrine of respondeat superior for an alleged sexual assault by a law enforcement officer.[60] In *Cloes*, the Court affirmed summary judgment in favor of the city employer and explained that, even though the law enforcement officer was in uniform with a trainee waiting outside, because he was not called to the scene of the plaintiff's home but was instead pursuing a personal errand, there was no evidence to raise a triable issue as to whether the alleged sexual assault was committed in the course of the very task assigned to the officer.[61]

Like the conduct of the officer in *Cloes*, Plaintiffs' allegations against Defendant Baehr describe an independent venture not within the scope of the tasks assigned to him. Plaintiffs allege Defendant Baehr obtained Plaintiff Wilson's private information from Plaintiffs' cell phones during a traffic stop where no ticket was issued.[62] Both Plaintiff Wilson and Bluth allege the search and seizure of information from their cell phones "had no relation to any legitimate law enforcement purpose during routine traffic stops."[63] Therefore, it is undisputed that Defendant

---

[58] *Id*. at 4 ¶ 25; *see Carpenter v. Denny,* No. 2:23-CV-00208-RFB-NJK, 2024 WL 4349353, at *5 (D. Nev. Sept. 29, 2024) (explaining the factors Nevada Courts deem most important in determining whether the employee was acting within the course and scope of the employee's employment include: whether at the time of the collision, the employee was "on-call" or compensated for the time) (collecting cases); *Evans v. Sw. Gas Corp.*, 842 P.2d 719, 723 (Nev. 1992); *Kornton*, 67 P.3d at 317 (whether the particular vehicle trip was directed by the employer or accomplished for the benefit of the employer); *Nat'l Convenience Stores, Inc. v. Fantauzzi*, 584 P.2d 689, 692 (Nev. 1978) (whether the nature of the vehicle trip was consistent with the employee's assigned role and duties).
[59] *Id*. at 5 ¶ 30.
[60] *Cloes v. City of Mesquite*, 582 F. App'x 721, 726 (9th Cir. 2014).
[61] *Id*.
[62] Complaint (ECF No. 1 at 4 ¶ 25).
[63] *Id*. at 5 ¶ 31.

1  Baehr did not commit alleged violations of Plaintiffs' rights while conducting his assigned tasks
2  but rather while he engaged in an unforeseeable independent venture for non-law enforcement
3  purposes. As such, from the face of the Complaint, the City is entitled to immunity under NRS
4  § 41.745(1) for Plaintiffs' third cause of action.[64]

### C.  Plaintiffs' Complaint Fails to State a Plausible *Monell* Claim.

"A municipality cannot be held liable *solely* because it employ[ed] a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."[65] Municipalities, such as the City, may be sued directly under 42 U.S.C. §1983 if the City is alleged to have caused a constitutional tort through a policy statement officially promulgated by that body's officers.[66] In *Monell*, the United States Supreme Court concluded that municipalities could only be held liable when a constitutional injury was inflicted by a government's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy."[67] "To establish municipal liability under *Monell*, [a plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation."[68]

A plaintiff may support a claim against a municipality where they "prove that inadequate training or supervision [of its police officers] was the moving force behind the deprivation."[69] To bring a claim based on the inadequacy of police training, however, a plaintiff must demonstrate "the failure to train in relevant respects amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact."[70] In *City of Canton*, 489 U.S. 378 (1989), the United States Supreme Court emphasized that "our first inquiry in any case alleging

---

[64] *Cloes*, 582 F. App'x at 726 *citing Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996) ("Generally, whether an employee is acting within the scope of his or her employment is a question for the trier of fact, but where undisputed evidence exists concerning the employee's status at the time of the tortious act, the issue may be resolved as a matter of law.").
[65] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).
[66] *Id.* at 690.
[67] *Id.* at 694.
[68] *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).
[69] *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167-68 (9th Cir. 2014).
[70] *City of Canton, Ohio*, 489 U.S. at 379.

municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."[71]

Additionally, liability "may not be predicated on isolated, sporadic incidents, it must be founded upon practice of sufficient duration, frequency and consistency that the practice has become a traditional method of carrying out policy."[72] As the Court held in *Oklahoma City v. Tuttle*, 471 U.S. 808 (1987), proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*; "to impose liability under those circumstances would be to impose it simply because the municipality hired one 'bad apple.'"[73] Unless the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker, the existence of the unconstitutional policy, and its origin, must be separately proved.[74] In rare circumstances, the single-incident theory of municipal liability applies but only where the facts show an obvious need for specific legal training.[75] Single-incident liability requires "the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizen's rights."[76]

      **i.**    **Plaintiffs Fail to Identify Unconstitutional Training Policies or Practices Adopted by the City which Directly Caused Defendant Baehr to Violate Their Rights.**

Plaintiffs offer only conclusory statements that the City's training policies regarding cell phone seizures and digital privacy were inadequate but they fail to identify any specific training policy with the alleged inadequacies.[77] Nor do Plaintiffs describe a particularized set of facts establishing a longstanding police officer custom ratified by the City.[78] "Absent a formal governmental policy, [Plaintiffs] must show a longstanding practice of custom which constitutes

---

[71] *Id.* at 385.
[72] *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).
[73] *Oklahoma City*, 471 U.S. at 822-23; *id.* at 831 (it is impermissible to infer "a city policy from the isolated misconduct of a single low-level officer.") (Brennan J. concurring)).
[74] *Id.* at 824.
[75] *City of Canton*, 489 U.S. at 390.
[76] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 409 (1997).
[77] Complaint (ECF No. 1 at 9 ¶¶ 50-54).
[78] *Id.*

1  the standard operating procedure of the local government entity."[79] Plaintiffs fail to (and cannot)
2  demonstrate that the unidentified City policies were the proximate cause of the alleged
3  constitutional violations committed by Defendant Baehr. Plaintiffs do not specifically identify
4  what "the facts available to the City" were which "put it on actual or constructive notice" that
5  Defendant Baehr or any of its other officers had violated or were in jeopardy of violating the Fourth
6  Amendment rights of citizens through cell phone seizures and/or searches for personal use,
7  stemming from routine traffic stops.[80] "*Monell* liability may not be imposed absent an underlying
8  violation of the plaintiff's rights that is related to an official policy or custom in question."[81]
9  Plaintiffs' factually threadbare recitals of the elements of a *Monell* cause of action, supported by
10 mere conclusory statements, do not state a plausible claim.[82]

       ii.    **Plaintiffs' Complaint Fails to Demonstrate Defendant Baehr's Alleged Actions Were Part of a Department Wide Pattern or Likely to Recur.**

13     Even presuming Plaintiffs had established a constitutional deprivation related to a City
14 official policy, practice, or custom, which they have not, their *Monell* claims still fail. Plaintiffs
15 have not pleaded and cannot demonstrate widespread activity by the City's police officers which
16 performing traffic stops with the pretextual purpose searching citizens' cell phones and seizing
17 information for personal use. However, Plaintiffs fail to allege "a [department wide] pattern of
18 similar constitutional violations that would establish that the policy of the inaction was the
19 functional equivalent of a decision by the city itself to violate the Constitution."[83] ~~Indeed,~~
20 ~~Plaintiffs' Complaint only alleges the two incidents at issue where Defendant Baehr violated their~~
21 ~~Fourth Amendment rights, the first on December 31, 2023, and the second on August 12, 2024.[84]~~
22 Plaintiffs allege that the two incidents at issue, the first on December 31, 2023, and the second on

---

[79] *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Absent a formal governmental policy, [plaintiffs] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity.") (internal quotation marks and citation omitted).
[80] Complaint (ECF No. 1 at 10 ¶ 53).
[81] *Ansara v. Maldonado*, 647 F. Supp. 3d 958, 979 (D. Nev. 2022) (citing *Andrade v. City of Burlingame,* 847 F. Supp. 760, 767 (N.D. Cal. 1994), *aff'd sub nom. Marquez v. Andrade*, 79 F.3d 1153 (9th Cir. 1996)).
[82] *Twombly*, 550 U.S. at 556.
[83] *Connick v. Thompson*, 563 U.S. 5, 72 (2011) (citing *City of Canton*, 489 U.S. at 395) (internal quotation marks omitted).
[84] ~~Complaint (ECF No. 1 at 3-4 ¶ 13, 19; 9 ¶ 51).~~

1  August 12, 2024, demonstrate recurring misconduct involving the same type of Fourth
2  Amendment violation by the same officer.[85] Even assuming that Defendant Baehr's conduct
3  included more than the two incidents alleged, a single officer's actions are insufficient to
4  demonstrate insufficient training by the City. The Ninth Circuit in *Benavidez v. County of San*
5  *Diego*, 993 F.3d 1134 (9th Cir. 2021), made clear that because "a particular officer may be
6  unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's
7  shortcomings may have resulted from factors other than a faulty training program."[86] Here, the
8  single incident liability theory is inapplicable because the need for curative or preventive training
9  was not readily apparent, and despite their frequency, traffic stops do not inevitably require "life-
10 threatening decisions" by officers necessitating obvious training.[87]

11      Plaintiffs feebly attempt to allege a probability of recurrence when they plead other City
12 officers will "encounter situations requiring them to handle citizens' cell phones during routine
13 traffic stops."[88] Plaintiffs' suggestion, however, ignores the entire fundamental premise of their
14 Complaint – that Defendant Baehr's alleged conduct was an intentional and deceptive misuse of
15 his police authority for wholly personal non-law enforcement purposes. Confusingly, Plaintiffs
16 contend that "proper training *would have* informed officers that accessing and copying personal
17 information from cell phones during traffic stops without warrant or probable cause violates the
18 Fourth Amendment."[89] And that "appropriate training *would have* prevented officers from using
19 their authority to obtain personal information for non-law enforcement purposes."[90] Plaintiffs,
20 however, do not plead that Defendant Baehr was confused about Fourth Amendment principles;

---

[85] Complaint (ECF No. 1 at 3-4 ¶ 13, 19; 9 ¶ 51).
[86] *Benavidez*, 993 F.3d at 1155.
[87] *Compare Greenstone v. Las Vegas Metro. Police Dep't*, No. 223CV00290GMNNJK, 2024 WL 385213, at *12 (D. Nev. Jan. 31, 2024) (applying the single incident exception because Officer Contreras was making a life-threatening decision, as evidenced by the shooting of Seth) *with Benavidez*, 993 F.3d at 1155 (declining to extend the single incident exception to a medical examination conducted upon a child in protective custody because *inter alia* the county employees were not making life-threatening decisions.).
[88] Complaint (ECF No. 1 at 9 ¶ 51).
[89] *Id*. at 9-10 ¶ 52. (Emphasis added).
[90] *Id*. (Emphasis added).

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

rather, Plaintiffs describe Defendant Baehr's acts as "dishonest, intentional, wanton, malicious, and oppressive."[91] Plaintiffs' contentions are mutually exclusive.

The conclusory allegations as to the identity of the City policy that allegedly abridged Plaintiffs' constitutional rights as set forth in Paragraphs 48-55 of the Complaint (ECF No. 1) fail to state a plausible §1983 claim against the City.[92] In these Paragraphs, Plaintiffs make the logical leap that the City is somehow liable under §1983 because the City was allegedly responsible for making and enforcing some unidentified yet insufficient training policies.[93] Plaintiffs have not and cannot show the City's de facto policies or customs were the moving force behind their alleged constitutional injuries or that the City was deliberately indifferent to a known risk of such injury.[94] The Court should grant judgment on the pleadings in the City's favor as to the fourth cause of action.

### D. Plaintiffs' Prayer for Punitive Damages is Legally Barred.

Plaintiffs' Complaint seeks punitive damages.[95] With respect to Plaintiffs' state law tort claims, however, "an award [against a Nevada public entity] may not include any amount as exemplary or punitive damages."[96] Similarly, in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981), the United States Supreme Court held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."[97]

### E. Amending the Complaint Would be Futile.

Leave to amend should be denied when amendment of a complaint to allege facts consistent with it cannot cure the pleading's deficiency.[98] Plaintiffs' Complaint exhaustively and indisputably describes the acts of Defendant Baehr as an intentional, unforeseeable, and independent venture

---

[91] *Id.* at 6 ¶ 35.
[92] *Twombly*, supra, *Ashcroft v. Iqbal*, 556 U.S. at 679-680 (plaintiff must provide "factual allegations" that "raise a right to relief above the speculative level" to the "plausible" level).
[93] *See Benavidez*, 993 F.3d at 1153-55 (granting county's motion to dismiss for failure to state a *Monell* claim).
[94] *Connick*, 563 U.S. at 70 ("proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents "difficult problems of proof," and we must adhere to a "stringent standard of fault," lest municipal liability under § 1983 collapse into *respondeat superior*).
[95] Complaint (ECF No. 1 at 11 ¶ c).
[96] NRS § 41.035(1).
[97] *City of Newport*, 453 U.S. at 271.
[98] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

without any valid law enforcement purpose.[99] As explained above, the City is therefore entitled to immunity under to NRS § 41.745.[100] Any amendment would be futile because Plaintiffs cannot assert allegations directly contrary to the current allegations in the Complaint (ECF No. 1).[101] For the same reason, the Plaintiffs' allegations in support of their *Monell* claim cannot conceivably be amended to state a valid claim demonstrating the City was the moving force or proximate cause of the unforeseeable actions taken by Defendant Baehr. No amendment can ameliorate the factual landscape Plaintiffs have alleged; amendment, therefore, is futile.

### IV. CONCLUSION

As Plaintiffs cannot amend their Complaint to "state a claim upon which relief can be granted" against the City, all of Plaintiffs' causes of action against the City must be dismissed without leave to amend. Accordingly, the City respectfully requests that this Court grant the City judgment on the pleadings under FRCP 12(c) and dismiss all of Plaintiffs' causes of action against the City.

DATED this _____ day of June 2025.

              KARL S. HALL
              Reno City Attorney

            By: */s/ Peter Keegan*
              PETER K. KEEGAN
              Deputy City Attorney
              Nevada State Bar No. 12237
              Post Office Box 1900
              Reno, Nevada 89505
              *Attorneys for the City of Reno*

---

[99] *Complaint* (ECF No. 1 at 5 ¶¶ 31, 37; 6 ¶¶ 33, 37).
[100] *See* Supra, Section III(B)(i)-(ii).
[101] *See Paylocity Corp. v. Synopsys, Inc.*, No. 23-CV-06349-AMO, 2025 WL 895215, at *3 (N.D. Cal. Mar. 24, 2025) citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.); *see also Owens v. Kings Supermarket*, 198 Cal. App. 3d 379, 384, 243 Cal. Rptr. 627, 630 (Ct. App. 1988) (explaining California's policy against sham pleading for the purpose of avoiding a demurrer. California's policy permits the court to take judicial notice of the prior pleadings and requires that the pleader explain the inconsistency. Where the pleader fails to do so, the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint.).