UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ERICA BLUTH, *et al.*, | Case No. 3:25-cv-00129-MMD-CSD |
| Plaintiffs, | ORDER |
| v. | |
| TYLER MICHAEL BAEHR, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Erica Bluth and Lavoria Wilson (collectively, "Plaintiffs") bring this civil action against the City of Reno ("City") and Tyler Michael Baehr (collectively, "Defendants"), alleging violations of their civil rights arising from traffic stops conducted by Baehr. Before the Court is the City's motion to stay this case[1] pending the outcome of criminal proceedings against Baehr in Case Number 3:25-cr-00002-MMD-CSD ("Criminal Case"). (ECF No. 22 ("Motion to Stay").) In the alternative, the City also moves to stay discovery pending its motion for judgment on the pleadings (ECF No. 16 ("Motion for Judgment"))[2]. For the reasons discussed below, the Court denies the City's Motion to Stay, and grants the Motion for Judgment in part as to punitive damages and denies it as to all other grounds.

---

[1]Plaintiffs opposed (ECF No. 32 ("Response")) and the City replied (ECF No. 35 ("Reply")).

[2]Plaintiffs opposed (ECF No. 31) and the City replied (ECF No. 33). The City additionally seeks leave to file a limited response to its Motion for Judgment to clarify a portion of its argument. (ECF Nos. 52, 52-1.) Plaintiffs and Baehr responded (ECF Nos. 53, 54) and the City replied (ECF No. 56). The Court grants the City's motion to supplement (ECF No. 52).

## II. BACKGROUND[3]

Plaintiffs allege that Baehr, a former law enforcement officer with the Reno Police Department and the City of Reno, performed pretextual traffic stops under color of state law, during which he accessed personal information and intimate videos and photos from their phones without consent or justification. (ECF No. 1). Plaintiffs' claims arise from two separate traffic stops.

Plaintiff Erica Bluth alleges that on December 31, 2023, she was pulled over by Baehr, who took her cell phone to his patrol vehicle for approximately 10 minutes. *Id.* at 3. Baehr asked for Bluth's number and she felt obligated to engage in text conversation with him. *Id.* They met in person once for coffee, at which time Baehr arrived in uniform and made comments that made Bluth uncomfortable. *Id.* In September 2024, detectives from Sparks Police Department visited Bluth at her parent's home and showed her personal and intimate photos and videos that were stored on her phone, that had been photographed from another device. *Id.* Bluth believes that Baehr accessed and copied these images during the traffic stop. *Id.*

Plaintiff Lavoria Wilson alleges that she was pulled over by Baehr on August 12, 2024. *Id.* at 4. During this traffic stop, Baehr took Wilson's phone under the pretext that he would get information about her car insurance. *Id.* While Baehr had Wilson's phone in his patrol vehicle, he accessed her personal text messages and other information, including explicit videos and intimate photographs. *Id.* Baehr let Wilson leave without citation claiming that he could not look up her information. In September 2024, Wilson was interviewed by a Sparks Police Officer, who informed her that Baehr had viewed her personal information during this traffic stop. *Id.*

Arising from these allegations, Plaintiffs bring four causes of action: (1) violation of Fourth Amendment rights under 42 U.S.C. § 1983 against Baehr; (2) violation of Article 1, Section 8 of the Nevada Constitution against Defendants; (3) intrusion upon seclusion

---

[3]The following facts are adapted from the Complaint (ECF No. 1).

against Defendants; and (4) a *Monell* failure to train claim against the City. (*Id.* at 5-8.) Plaintiffs seek declaratory relief and compensatory, exemplary and punitive damages. (*Id.* at 10-11.)

On January 23, 2025, Baehr was charged with two counts of Depravation of Rights Under Color of Law, in violation of 18 U.S.C. § 242 in the Criminal Case, arising from the events involving Plaintiffs. A jury trial was initially set for November 4, 2025, but the trial date was continued and is currently set for June 2, 2026.

### III.     DISCUSSION

#### A.     Motion to Stay

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995). Nevertheless, a court is within its discretion to order a stay in the civil proceedings where the interests of justice so require. *Id.* This determination is case-specific and "particular [to the] circumstances and competing interests involved in the case." *Federal Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir. 1989). A court must consider the extent to which the defendant's Fifth Amendment rights are implicated, but this factor is "only one consideration to be weighed against others. *Keating,* 45 F.3d at 326 (holding that the ALJ did not abuse his discretion in deciding to proceed with the hearing notwithstanding the implication of defendant's Fifth Amendment rights). A court must also consider the following factors in ruling on a stay: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.* at 325. The Court addresses these factors in turn.

3

### 1. Defendant Baehr's Fifth Amendment Rights

Regarding the first prong, the City asserts that the Court should grant its Motion to Stay because Baehr invoked the Fifth Amendment. (ECF No. 22 at 2.) Plaintiffs respond, citing to *Keating*, that "Baehr's invocation of the Fifth Amendment is a strategic choice, and courts have held that a defendant has no absolute right to avoid choosing between testifying in a civil matter and asserting this privilege." (ECF No. 32 at 3.)

Several district courts in the Ninth Circuit have held that factual overlap between parallel proceedings is an important consideration in determining whether a defendant's Fifth Amendment rights are implicated. *See Houseton v. Kirk*, No. 2:23-CV-06887-SVW-MRW, 2024 WL 3051057, at *2 (C.D. Cal. May 6, 2024); *see also Sostek v. Cnty. of San Bernardino*, No. 5:23-CV-02236-MRA-MRW, 2024 WL 3467714, at *2 (C.D. Cal. May 30, 2024). The Court finds these authorities persuasive.

Here, there is no uncertainty that Baehr's Fifth Amendment rights are implicated because he invoked his Fifth Amendment protections in his answer to Plaintiffs' Complaint (ECF No. 20), and because both cases share the same factual bases. Thus, the Court finds that Baehr's Fifth Amendment rights are strongly implicated in this action, and this factor weighs in favor of granting a stay.

### 2. Remaining *Keating* Factors

#### a. Interest of Plaintiffs

The City argues that a stay would aid Plaintiffs because both cases involve allegations of Fourth Amendment violations stemming from the same facts, therefore nonmutual collateral estoppel would apply to Plaintiffs' claims. (ECF No. 35 at 2-3.) The City claims this would expedite a determination of whether Baehr violated Plaintiffs' Fourth Amendment rights. (ECF Nos. 22 at 6.) Plaintiffs counter that a stay would delay justice for Plaintiffs and that the City's claim that a stay would be beneficial is speculative, as Plaintiffs bring state law claims and a *Monell* failure to train claim that would not be resolved by the criminal litigation. (ECF No. 32 at 2-3.) The City acknowledges that

Plaintiffs may need to present additional evidence given these claims. (ECF No. 35 at 3-4.)

The Court agrees with Plaintiffs that the first factor weighs in their interest. Plaintiffs have a strong interest in the efficient resolution of their claims. Much of the City's argument regarding the lack of prejudice to Plaintiffs hinges upon its assertion that trial was scheduled for November 4, 2025, which would "connote[] an impending verdict." (*Id.* at 3.) Baehr's jury trial in the criminal case has been continued to June 2026 and Plaintiffs filed their Complaint on March 5, 2025. (ECF No. 1.) To delay proceedings pending the outcome of the criminal trial would result in a delay to the resolution of Plaintiffs' case, and there is a possibility that Baehr's trial could be continued again. Moreover, given that the parties agree that additional evidence would likely be required that would not be discovered in the Criminal Case, the Court disagrees with the City that Plaintiffs' interest in expeditious resolution is protected by a stay.

### b. Burden Imposed Upon Defendants

The City argues that it is between a rock and a hard place due to its conflicting discovery obligations in the civil case and its obligation to avoid the disclosure of sensitive information that would affect Baehr's constitutional trial rights. (ECF No. 22 at 8.) Plaintiffs counter that the City's concern about discovery obligations is overstated, courts routinely manage parallel proceedings by coordinating discovery to avoid prejudice, and the City can seek tailored protective orders to manage sensitive evidence. (ECF No. 32 at 3-4.)

The Court agrees with Plaintiffs. The Court notes that it has issued a protective order in Baehr's Criminal Case. However, if the City faces a real burden if a stay is not imposed, the City has not sufficiently stated as much in its Motion to Stay. The City's argument is a mere four sentences long, and its Reply does not address Plaintiffs' argument that the City is not a party in the criminal case and can manage potential burdens with protective orders. (ECF Nos. 22 at 8; 35 at 4-5.) Moreover, the City's argument in its Reply with respect to *Lizarraga v. City of Nogales, Arizona*, No. CV 06-474 TUC DCB, 2007 WL 10146106, at *2 (D. Ariz. Nov. 1, 2007), is unpersuasive because

it is not "strikingly similar" to the case at bar. (ECF No. 35 at 4.)[4] The Court thus finds that the second *Keating* factor weighs against granting at stay.

### c.  Judicial Economy

The City argues a stay would promote judicial economy because otherwise the Court would likely have to resolve duplicative discovery disputes and because there is a likelihood that nonmutual collateral estoppel would apply to Plaintiffs' claims. (ECF No. 22 at 8-9.) Plaintiffs counter that proceeding will allow the court to resolve their claims promptly. (ECF No. 32 at 4.) A stay would merely defer discovery disputes raised by the City, while witnesses become unavailable or memories fade. (*Id.*)

As an initial matter, "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-30 (1979) (noting that defensive collateral estoppel gives plaintiff a strong incentive to join all potential defendants, whereas offensive collateral estoppel will likely increase the total amount of litigation). Moreover, "[c]ourts have recognized that this *Keating* factor normally does not favor granting a stay, because 'the court has an interest in clearing its docket.'" *ESG Cap. Partners LP v. Stratos*, 22 F.Supp.3d 1042, 2047 (C.D. Cal. 2014).

As to duplicative discovery, the scope of discovery in the Criminal Case will likely be narrower than the broader civil discovery that would be allowed in this civil case. And while the City will presumably work to provide the United States of America, as the prosecuting party in the Criminal Case, with relevant evidence, some of which may be provided as part of the discovery in this case, the burden of duplicative discovery, if any, will be minimal. Moreover, the parties acknowledge that the criminal case will not resolve all issues raised in the civil case, and thus discovery will still be required. The Court also

---

[4]The Court in *Lizarraga* granted a stay of discovery because the plaintiff, who had allegedly been sexually assaulted by a police officer, had provided evidence of her fragile mental state and sought a protective order to prevent the deposition evidence in the civil case being used by the criminal defense. *Id.* Here, the City, not Plaintiffs, seeks the stay.

considers Plaintiffs' concerns about the loss of witnesses and evidence. Accordingly, the Court finds that the third *Keating* factor weighs against granting a stay.

### d. Interests of Nonparties

The City suggests that nonparties could benefit from a stay, as Plaintiffs would, due to collateral estoppel given the likelihood of an expedited outcome. (ECF No. 22 at 9.) Plaintiffs counter that the interests of nonparties weigh against a stay, because potential victims or witnesses who may also have claims would benefit from the timely resolution of this action. (ECF No. 32 at 5.) The City, in its Reply, also contends that there is an increased possibility of settlement of nonparty claims resulting from a verdict in the Criminal Case. (ECF No. 35 at 5-6.)

The Court finds that the fourth *Keating* factor weighs neutrally. Both parties speculate as to the existence of and outcomes for unascertained nonparties. Since neither party has cogently identified nonparties whose interests would be affected by a stay, the Court finds that the fourth *Keating* factor weighs neutrally.

### e. Public Interest

The City argues that the fifth *Keating* factor weighs in its favor because a stay would expedite the outcome because of Defendant's Baehr's (now former) November trial date. (ECF No. 22 at 10.) Plaintiffs argue that the public has a compelling interest in ensuring that allegations of civil rights law enforcement are addressed promptly and resolution would promote public confidence in the justice system. (ECF No. 32 at 5.)

The Court agrees with Plaintiffs that the public has a compelling interest in ensuing that the allegations raised in this case are addressed in a timely manner. Especially given that trial in the Criminal Case has been continued, the Court cannot agree with the City's argument that an outcome determinative verdict will be issued imminently. Accordingly, the Court finds that the fifth *Keating* factor weighs against granting a stay.

### 3. Conclusion

The Court has weighed the extent to which Baehr's Fifth Amendment rights are implicated and the *Keating* factors. Though Baehr's Fifth Amendment rights are

implicated given the parallel criminal proceedings, this consideration is just one to be weighed against others, and "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 326. Not only is it permissible to conduct parallel civil and criminal proceedings, but "it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.* And under the Court's analysis, the other *Keating* factors weigh against a stay. Accordingly, the Court denies the City's Motion to Stay.[5]

### B. Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is "properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999). A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion thus the same standard of review applies. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). To withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a complaint, while legal conclusions are not entitled to the assumption of truth).

In its Motion for Judgment, the City argues that (1) Plaintiffs' second and third causes of action fail because they have failed to allege sufficient factual allegations for the City to be liable under a theory of respondeat superior; (2) Nevada law entitles the City to immunity as to Plaintiffs' second and third causes of action; (3) Plaintiffs' Complaint fails to state a plausible *Monell* claim; and (4) Plaintiffs cannot recover punitive damages against the City. The Court will address each argument in turn.

---

[5]The Court notes that in its Motion to Stay, the City moved in the alternative for a stay of discovery pending the City's motion for judgment on the pleadings. Because the Court will address this underlying motion, the Court denies the alternative request as moot.

### 1. Respondeat Superior

The City alleges that Plaintiffs' second and third causes of action fail because they have failed to plead sufficient factual allegations that Baehr was acting in his official capacity. (ECF No. 16 at 4.) The City argues that Plaintiffs have only alleged threadbare, conclusory allegations that Baehr was acting in his official capacity and provide with no factual allegations that he was acting in an official capacity within the scope of his employment. (*Id.* at 5.) Plaintiffs counter that their Complaint alleges that Baehr was acting within the scope of his employment at the time of the incidents, and that his actions occurred during routine police encounters which are within a police officer's scope of employment. (ECF No. 31 at 4-5.)

Under Nevada law, respondeat superior liability attaches "when the employee is under the control of the employer and when the act is within the scope of the employment." *Molino v. Asher*, 618 P.2d 878, 817 (Nev. 1980). A willful tort may fall within the scope of employment where it is "committed in the course of the very task assigned to the employee." *Prell Hotel Corp. v. Antonacci*, 469 P.2d 399, 400 (Nev. 1970).

While legal conclusions are not entitled to the truth, here, Plaintiffs have alleged sufficient facts to support a plausible claim of respondeat superior liability. Plaintiffs allege that while Baehr was working as an officer under color of state law, he performed traffic stops during which he obtained Plaintiffs' cell phones under the pretense of checking car insurance and subsequently viewed or took private contents from their phones in violation of their state rights. (ECF No. 1 at 3-4.) These factual allegations, if accepted as true, are sufficient to support that Baehr was under control of his employer and that relevant acts took place while he was acting in an official capacity in the scope of his employment. Accordingly, the Court denies the Motion for Judgment as to respondeat superior liability.

### 2. Immunity

The City next argues that NRS § 41.745 entitles it to employer immunity because Baehr's conduct was an independent venture that was not within his assigned tasks and was not reasonably foreseeable. (ECF No. 16 at 6-12.) Plaintiffs counter that Baehr's

9

conduct occurred within the scope of his employment, that under NRS § 41.0337 the City must be named as a party defendant, and that factual disputes raised in the City's answer preclude judgment on the pleadings, citing to an unreported case from this district. (ECF No. 31 at 6-7.)

Under Nevada law:

> [a]n employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee:
> (a) Was a truly independent venture of the employee;
> (b) Was not committed in the course of the very task assigned to the employee; and
> (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.

NRS § 41.745(1).

Here, Plaintiffs have alleged that while Baehr was working as a Reno Police Officer performing official police tasks, he took possession of their cell phones under the pretext of official business. (ECF No. 1 at 3-7). In other words, Plaintiffs allege that Baehr violated their state rights while performing tasks assigned to him. These allegations, if true, make plausible that the City is not entitled to employer immunity. Finding that Plaintiffs have alleged sufficient facts to show that the City has not satisfied the second prong of NRS § 41.745(1), the Court denies the City's Motion as to employer immunity.

### 3. *Monell* claim

The City next argues that Plaintiffs fail to plead a plausible *Monell* claim because they offer only conclusory statements that the City's training policies were inadequate but fail to identify a specific training policy with inadequacies. (ECF No. 16 at 13.) The City further argues that Plaintiffs failed to plead that Baehr's conduct is a part of a pattern of constitutional violations or likely to reoccur because the Complaint only alleges two incidents, nor do Plaintiffs allege what facts were available to the City that would put it on actual or constructive notice. (*Id.* at 14.) Plaintiffs counter that they have alleged that the City's training policies were inadequate in five specific areas and that they have sufficiently alleged deliberate indifference. (ECF No. 31 at 12-16.)

To establish municipal liability for a *Monell* claim, Plaintiffs must establish that "(1) [they were] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [Plaintiffs'] constitutional right; and (4) the policy was the moving force behind the violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). For a failure to train claim, as Plaintiffs have brought here, "a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

To survive a Rule 12(c) motion, Plaintiffs need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, Plaintiffs have so sufficiently pled. Plaintiffs allege that the "training policies of the City of Reno were not adequate to train its police officers to handle the usual and recurring situations with which they must deal" including the constitutional limits on the search and seizure of cell phones and constitutional requirements for accessing private information on personal devices. (ECF No. 1 at 9.) Plaintiffs further allege that the City was deliberately indifferent to the consequences of this failure to train, given the recurring nature of the misconduct as evidenced by two separate incidents alleged in the Complaint, and the foreseeability that officers would encounter situations requiring them to handle citizen cell phones during routine traffic stops. (*Id.*) This is sufficient to state a failure to train claim. Moreover, Plaintiffs need not point to specific deficient policies—there is no requirement of heightened fact pleading of specifics, "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 570; *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (clarifying that the *Iqbal* and *Twombly* standard applied to *Monell* claims). Accordingly, the Court denies the City's Motion as to the *Monell* claim.

####    4.    Punitive Damages

The City argues that Plaintiffs seek punitive damages from it, but punitive damages are not permitted. (ECF No. 16 at 16.) Plaintiffs counter without citing to any legal authority that the issue of damages is premature and should not be resolved on a Rule 12(c) motion. (ECF No. 31 at 17.)

Under Nevada law, an award for damages in a tort action brought against a political subdivision cannot include any punitive damages. NRS § 41.035(1); *see also Peterson v. Miranda*, 991 F.Supp.2d 1109, 1119-20 (D. Nev. Jan. 10, 2014) (dismissing plaintiffs' punitive damages claim against the Clark County School District because an award for damages against a political subdivision of the state of Nevada cannot include punitive damages). Moreover, "a municipality is immune from punitive damages under 42 U.S.C. § 1982. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, punitive damages against the City are not available for the claims asserted here as a matter of law. The Court grants the City's Motion as to punitive damages with regard to Plaintiffs' claims against the City.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the City's Motion to Stay (ECF No. 22) is denied.

It is further ordered that the City's Motion for Judgment (ECF No. 16) is granted in part and denied in part. It is granted as to Plaintiffs' punitive damages claims against the City. It is denied as to the remaining claims.

It is further ordered that the City's motion to supplement (ECF No. 52) is granted.

///

///

///

DATED THIS 16th Day of October 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE